FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 14, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAYNE F., | No. 4:18-cv-05026-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 16, and grants Defendant's Motion, ECF No. 17.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

 If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 416.920(c).

 At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

 If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

ALJ

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 26, 2013, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset beginning August 2, 1984, which she later amended to July 26, 2013.[1]  Tr. 47, 62, 244-50.  The application was denied initially, Tr. 148-51, and on reconsideration, Tr. 155-60.  Plaintiff appeared before an administrative law judge (ALJ) on June 29, 2016 and August 25, 2016.  Tr. 41-98.  On October 27, 2016, the ALJ denied Plaintiff's claim.  Tr. 15-40.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 26, 2013.  Tr. 20.  At step

---

[1] Plaintiff previously applied for benefits in 2004 and 2011, with the latest claim denied on June 8, 2012.  Tr. 18, 99.  The ALJ did not reopen these prior applications.  Tr. 18.  Plaintiff contends in a footnote in the Reply that the amended onset date was "actually amended to the prior SSI application filing date."  ECF No. 20 at 4, n.1.  The transcript of the hearing on June 29, 2016 does not support this contention.  Tr. 47 ("ALJ: If I understanding[sic] your motion that you're amending the AOD to the protective filing date? Atty: Yes.").

ORDER - 6

two, the ALJ found that Plaintiff has the following severe impairments: obesity, osteoarthritis and allied disorders, essential hypertension, affective disorders, drug and substance addiction disorders, and anxiety disorders.  Tr. 21.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 22.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] has . . . the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk with normal breaks for 4 hours in an 8-hour workday and sit with normal breaks for 6 hours in an 8-hour workday.  She can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl but can never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to hazards such as dangerous machinery, unprotected heights, etc. and fumes, odors, dusts, and gases.  [Plaintiff] is capable of performing simple, routine[] tasks and familiar detailed tasks with customary breaks and lunch.  [Plaintiff] is able to sustain concentration and persistence with customary breaks and lunch.  [Plaintiff] can have contact with 5 or less coworkers for work tasks and can have superficial contact with the public for work tasks.  There should be no more than occasional changes in the work environment.  Superficial contact means 5 minutes or less per occurrence.  [Plaintiff] is not able to perform at a production rate pace such as assembly line work where the pace is mechanically controlled but [Plaintiff] can perform goal[sic] oriented work such as office cleaner or where the worker is in more control of the pace and it is not set mechanically by somebody else.  [Plaintiff] will be off task about 10 percent over the course of an 8-hour workday.

Tr. 25.

ORDER - 7

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 32. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: small products assembler; assembler, electrical accessories; sub assembler of electrical equipment; and parking cashier. Tr. 33. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 26, 2013, the date the application was filed, through the date of the decision. Tr. 34.

On December 20, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her Title XVI supplemental security income benefits under the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered Plaintiff's impairments at step two;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4. Whether the ALJ properly weighed the lay witness evidence; and

ORDER - 8

5.  Whether the ALJ properly incorporated the opined limitations into the RFC and evaluated step five.

ECF No. 16 at 6-20.

## DISCUSSION

### A. Step Two

Plaintiff contends the ALJ erred by failing to identify a number of conditions as severe impairments at step two.  ECF No. 16 at 13.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908 (2010).[2]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities

---

[2] As of March 27, 2017, relevant regulations including 20 C.F.R. § 416.908 was removed and reserved, and 20 C.F.R. §§ 416.921, 416.922 were revised.  The Court applies the version that was in effect at the time of the ALJ's decision.

which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a) (2010); SSR 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ concluded that Plaintiff had severe impairments including obesity, osteoarthritis and allied disorders, essential hypertension, affective disorders, drug and substance addiction disorders, and anxiety disorders. Tr. 21. The ALJ also considered the record concerning asthma, kidney impairment, fibromyalgia, multiple sclerosis, and diabetes, but concluded these

ORDER - 10

conditions were non-severe as they did not more than minimally impact Plaintiff's ability to perform basic work activities or were not medically determinable. Tr. 21-22.

Plaintiff contends the ALJ "committed legal error in failing to account" for numerous additional impairments including: "respiratory ailments and infections, including COPD, asthma, pleural effusion, pulmonary hypertension, small airways disease, lower lobe pulmonary nodule, and pneumonia"; history of acute renal failure and impaired kidney function"; "fibromyalgia/chronic pain syndrome, with back, leg, and forearm pain"; "arthritis and pain in her knees"; "supratentorial white matter disease and concern for multiple sclerosis, with cramping in arms, facial numbness, and headaches"; "history of fracture of right foot, with ongoing pain and swelling"; "schizoaffective disorder"; "chronic iron deficiency anemia"; "hyperlipidemia"; "cognitive disorder and ADHD"; "personality disorder"; and "social phobia." ECF No. 16 at 13-14.

Defendant contends Plaintiff's opening brief lacked developed argumentation regarding step two. ECF No. 17 at 6. Plaintiff, who bears the burden of proving severity and harmful error, does not cite specific evidence or present any meaningful argument in support of the claim that the ALJ erred at step two. ECF No. 16 at 13-14. In the Reply, Plaintiff contends her respiratory ailments cause the need for breaks and absenteeism due to hospitalizations;

fibromyalgia, supratentorial white matter disease, arthritis and history of right foot fracture result in widespread symptoms causing the need for breaks and absenteeism; and her mental health impairments result in social limitations and off-task behavior.  ECF No. 20 at 6-7.  Yet, Plaintiff has identified no evidence supporting the allegation that these conditions more than minimally impact her ability to perform basic work activities.  A mere recitation of medical diagnoses does not demonstrate how each of the conditions impacts Plaintiff's ability to engage in basic work activities.  Thus, Plaintiff has not demonstrated that the ALJ erred.

Moreover, Plaintiff's contention lacks merit.  As Plaintiff was found to have multiple severe impairments, this case was not resolved at step two.  If there was any error in the ALJ's finding at step two, it is harmless as all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Plaintiff makes no showing that any of the conditions mentioned create limitations not already accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).  There was no error in the step two analysis.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of examining psychologists Thomas Genthe, Ph.D., Jan Kouzes, Ed.D., and Tae-Im Moon, Ph.D. ECF No. 16 at 8-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

### 1. Dr. Genthe

Dr. Genthe conducted a consultative psychological evaluation on April 17, 2012. Tr. 457-66. Dr. Genthe's diagnostic impression was schizoaffective disorder, attention-deficit hyperactivity disorder, kleptomania, cognitive disorder, NOS, cocaine dependence, in full-sustained remission, and heroin dependence, in full-sustained remission. Tr. 464. Dr. Genthe administered a number of tests and assessed Plaintiff's abilities as follows: memory performance (ranging from average to low average); ability to understand and remember short, simple instructions (good to poor); ability to carry out detailed instructions (fair to poor); ability to sustain ordinary routine without supervision (fair to poor); ability to work with or near others without being distracted by them (poor); ability to respond appropriately to changes in the work setting (poor); ability to interact with the public (poor); ability to get along with coworkers and/or peers (poor); and ability to respond appropriately to criticism from supervisors (poor). *Id.* Dr. Genthe

indicated that at the time of the assessment Plaintiff was not being treated with medication and he estimated a period of 12-18 months may be "sufficient to address her treatment needs at least moderately well, and help her regain the necessary emotional functioning to resume fulltime work[sic] related activities." Tr. 465.

Because Dr. Genthe's opinion was contradicted by the state agency psychological consultants Eugene Kester, M.D., Tr. 122-24, and John Robinson, Ph.D., Tr. 138-40, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Genthe's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ stated that he "did not consider" Dr. Genthe's opinion because it was outside the relevant period of time and not based on medical or other evidence of Plaintiff's functioning during the relevant period. Tr. 32. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165; *see also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time, and reliance on more recent opinions); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion). The

Ninth Circuit, however, has held that the ALJ is required to consider "all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). In an unpublished disposition the Ninth Circuit held it was error for the ALJ to "silently disregard" medical opinion evidence that predates the alleged onset date. *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (quoting *Carmickle*, 533 F.3d at 1165). In another unpublished opinion, the Ninth Circuit held that the ALJ may reject medical evidence that predates the alleged onset disability date "in favor of more recent opinions" when the more recent medical opinion recent evidence is "consistent with the record as a whole." *Brown v. Comm'r of Soc. Sec.*, 532 F. App'x 688, 689 (9th Cir. 2013) (citation and internal quotation marks omitted).

Here, the ALJ did not silently disregard Dr. Genthe's opinion, nor did the ALJ simply refuse to consider all evidence predating Plaintiff's onset date as he specifically considered Dr. Kouzes' more recent June 2013 opinion. Significant to this case, Plaintiff's amended onset date of July 2013 was shortly after Plaintiff's release from prison following service of a sentence (reportedly the length of one year and a day) for possession of methamphetamines during which she received treatment for her admitted long history of cocaine and methamphetamine use. Tr. 66, 71, 497, 1205; *cf.,* Tr. 459 (Dr. Genthe's report indicating Plaintiff denied relapse since 2003 and stating Plaintiff had been "clean and sober for a significant

period of time."). Accordingly, the ALJ's conclusion that Dr. Genthe's assessment was not based upon medical or other evidence of the Plaintiff's functioning during the relevant period was a sufficiently specific and legitimate reason to assign no weight Dr. Genthe's opinion.

Further, even if the ALJ erred, Plaintiff has not shown how an analysis of Dr. Genthe's opinion would change the outcome. Dr. Genthe believed that medication could help Plaintiff regain functioning to resume fulltime work-related activities. Tr. 465. This is consistent with the ALJ's conclusion that during the relevant period Plaintiff's mental health symptoms improved with medication and treatment. Tr. 29. Thus, Plaintiff has not met her burden to show harmful error.

   *2. Dr. Kouzes*

   On June 18, 2013, Dr. Kouzes completed an evaluation of Plaintiff at the request of the Washington State Department of Social and Health Services (DSHS). Tr. 503-14. She diagnosed Plaintiff with Bipolar I disorder, most recent episode mixed, severe with psychotic features and polysubstance dependence by client report, early remission in a controlled environment. Tr. 504. She assessed Plaintiff had marked limitations in her ability to: (i) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (ii) communicate and perform effectively in a work setting; (iii) complete a normal work day and work week without

interruptions from psychologically based symptoms; (iv) maintain appropriate behavior in a work setting; and (v) set realistic goals and plan independently. Tr. 505. She opined Plaintiff would remain impaired 6-12 months with treatment, which she recommended should include medication management, counseling and a vocational assessment. Tr. 506. The ALJ assigned little weight to Dr. Kouzes' mental evaluation. Tr. 30. Because Dr. Kouzes' opinion was contradicted by the state agency psychological consultants Dr. Kester, Tr. 122-24, and Dr. Robinson, Tr. 138-40, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Kouzes' opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ assigned little weight to Dr. Kouzes' opinion because she based her ratings on a single evaluation for the purpose of obtaining public benefits through DSHS. Tr. 31. The number of visits a claimant has made to a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). However, the fact that Dr. Kouzes examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion, especially given that the ALJ credited the opinion of nonexamining physicians who did not evaluate Plaintiff at all. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). In addition, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis

for rejecting them." *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.,* 839 F. Supp. 1415, 1426 (D. Or. 1993)).

Second, the ALJ found that the marked limitations were internally inconsistent. Tr. 31. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. The ALJ found that Dr. Kouzes' marked limitations were inconsistent with his contemporaneous mental status examination findings and the assessed GAF[3] score of 55, indicating "only moderate limitations in overall functioning." Tr. 31. As the ALJ noted, Plaintiff maintained good eye contact, an appropriate mood, logical thought processes and was able to remember three of three objects immediately and two of three after a delay. Tr. 31 (citing Tr.

_____

[3] The GAF Scale measures "the clinician's judgment of the individual's overall level of functioning" as to "psychological, social, and occupational functioning," but not "impairment in functioning due to physical (or environmental) limitations." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at 32 (4th ed. Text Revision 2000); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

ORDER - 19

506-07).  Plaintiff performed "within normal limits" in all areas of the mental

status exam.  Tr. 506-07.  While the ALJ found that the GAF score was not

dispositive of Plaintiff's functional abilities over 12 continuous months, Tr. 31, an

ALJ may properly consider an inconsistency between a functional assessment and

a GAF score in rejecting a physician's opinion.  *Graham v. Barnhart*, 76 F. App'x

829, 830 (9th Cir. 2003) (finding physician's opinion was properly rejected where

GAF score was inconsistent with findings in report).  The ALJ reasonably

determined Dr. Kouzes' examination findings were inconsistent with Dr. Kouzes'

opined limitations.  This was a specific and legitimate reason to assign the opinion

little weight.

Finally, the ALJ gave Dr. Kouzes' opinion little weight because it was

inconsistent with the records of Plaintiff's treating providers.  Tr. 31.  A medical

opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at

1228; *Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002); *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019.  An ALJ may

discredit physicians' opinions that are unsupported by the record as a whole.

*Batson*, 359 F.3d at 1195.  Moreover, an ALJ is not obliged to credit medical

opinions that are unsupported by the medical source's own data and/or

contradicted by the opinions of other examining medical sources.  *Tommasetti*, 533

F.3d at 1041.  The ALJ found that Plaintiff's treating records show that Plaintiff

"was able to stabilize her mood and anxiety with treatment." Tr. 31; *see, e.g.*, Tr. 503 (Plaintiff's report to Dr. Kouzes that the "big issue with work" was that if she was not on medication she doesn't care, but indicating "right now I am on medication and I am more stable than I have been"); Tr. 1110 (Feb. 2016: progress note indicating anxiety "controlled with current medication"); Tr. 1114 (Dec. 2015: office visit for refill on medications stating, "[s]he is doing well and has not had any increase in anxiety symptoms this month"); Tr. 1120 (Sept. 2015: progress note indicating anxiety "improved with medication); Tr. 1156 (July 2014: assessment listing anxiety/panic reaction as "stable"); Tr. 1165 (May 2016: progress note stating "anxiety well controlled with current medication"). Plaintiff began seeing a psychiatrist in 2014. During June 2014 and September 2014 medication management appointments she was cooperative and able to maintain intermittent to good eye contact. Tr. 1186, 1208. She described her mood as "good" and "fairly stable" as she could sleep better and was not having frequent nightmares. Tr. 1185-86, 1208. In addition to the cited examples, elsewhere in the ALJ's decision, the ALJ detailed record of Plaintiff's improvement with medication documented in her treating mental health and primary care providers' records. Tr. 28-29.

Plaintiff claims the cited treatment notes do not support the ALJ's conclusion and instead, "the record shows that [Plaintiff] is not able to stabilize her

mood and anxiety." ECF No. 16 at 10. In the Reply, Plaintiff cites to evidence from October 2013 when she reported experiencing nightmares every night, Tr. 1088, however just one month earlier, Plaintiff was not taking her medications, Tr. 1097, and the subsequent psychotherapy records cited by the ALJ evidence less frequent nightmares. Plaintiff also points to psychotherapy records documenting Plaintiff presented as "anxious," Tr. 1172, 1293; was experiencing anxiety and racing thoughts, Tr. 1173; had "high stress in a variety of situations and relationships," Tr. 1175; was "tearful while talking about fear of relapse," Tr. 1176; and was "tearful and fidgety" while speaking of abuse during counseling, Tr. 1203. Plaintiff's assertion amounts to alternative interpretation of the evidence. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ reasonably concluded that Dr. Kouzes' opined limitations were inconsistent with the overall record, which showed stability with medication and treatment. This was another specific and legitimate reason to assign little weight to Dr. Kouzes' opinion.

   *3. Dr. Moon*

   In December 2013, Dr. Moon completed a psychological/psychiatric evaluation of Plaintiff. Tr. 525-29. He reviewed Dr. Kouzes' evaluation. Tr. 525.

ORDER - 22

Dr. Moon diagnosed Bipolar I disorder and anxiety disorder NOS. He opined

Plaintiff would have a single marked limitation in her ability communicate and

perform effectively in a work setting and moderate limitations in twelve other

basic work activities. Tr. 527-28. The ALJ assigned this opinion some weight.

Tr. 31. Because Dr. Moon's opinion was contradicted by Dr. Kester, Tr. 122-24,

and Dr. Robinson, Tr. 138-40, the ALJ was required to provide specific and

legitimate reasons for rejecting it. *Bayliss*, 427 F.3d at 1216.

First, the ALJ pointed out that like Dr. Kouzes, Dr. Moon evaluated Plaintiff

one time for purposes of obtaining benefits through DSHS. Tr. 31. This is not a

legally sufficient basis for rejecting the opinion. *See Lester*, 81 F.3d at 832 (citing

*Ratto v. Sec'y, Dept. of Health and Human Servs.,* 839 F. Supp. 1415, 1426 (D. Or.

1993)).

Next, the ALJ noted that Dr. Moon's evaluation occurred prior to Plaintiff's

stabilization following receipt of medication management services from a

psychiatrist and while her medication was still being adjusted. Tr. 31. An ALJ

may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at

1195. The specific and legitimate reason standard can be met by "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, [the

ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*,

157 F.3d 715, 725 (9th Cir. 1998). In addition, the effectiveness of medication and

treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility). The ALJ found that treatment records after Dr. Moon's evaluation showed that Plaintiff's communication and eye contact improved. Tr. 31 (citing Tr. 1186 (Sept. 2014: mental status examinations); Tr. 1193 (June 2014); Tr. 1208 (June 2014)). The ALJ's decision describes the evidence of improvement with medication in detail, including evidence where Plaintiff herself reported benefit. Tr. 28-29, 31; *see, e.g.*, Tr. 880 (July 2015: "anxiety, depression controlled with medications"); Tr. 1110 (Feb. 2016: anxiety "controlled with current medication" and working fulltime at Subway after receiving promotion to shift lead); Tr. 1114 (Dec. 2015: "She is doing well and has not had any increase in anxiety symptoms this month"); Tr. 1120 (Sept. 2015: anxiety "improved with medication"); Tr. 1131 (April 2015: hired at Subway and is working almost every day); Tr. 1165 (May 2016: anxiety "well controlled with current medication"). Though Plaintiff contends her mental health symptoms have not been controlled, ECF No. 20 at 3, it is the ALJ's role to resolve conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ORDER - 24

Plaintiff's stabilization with treatment following Dr. Moon's evaluation was a specific and legitimate reason or assigning only "some weight" to Dr. Moon's opinion.

Alternatively, any error in failing to provide a specific and legitimate reason to give less than full weight to Dr. Moon's opinion is harmless because his opinion that Plaintiff was markedly limited in the ability to communicate and perform effectively in a work setting was reasonably incorporated into the RFC, including limitations in interactions with coworkers and the public, and limitations to simple, routine tasks with only occasional changes in the work environment. Tr. 25; *see Jamtaas v. Berryhill*, 706 F. App'x 401, 402 (9th Cir. 2017).

**C. Plaintiff's Symptoms Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 16 at 16-19. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[4] SSR 16-3p, 2016 WL

---

[4] At the time of the ALJ's decision in October 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).

1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location,

ORDER - 26

duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 26.

### 1. Inconsistent Objective Evidence

The ALJ found the limitations reported by Plaintiff regarding her physical and mental impairments were not consistent with disabling functional limitations or supported by the medical evidence. Tr. 26-29. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the

symptoms alleged is not supported by objective medical evidence. *Rollins*, 261

F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885

F.2d at 601. However, the medical evidence is a relevant factor in determining the

severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20

C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor which may be

relied upon in discrediting a claimant's testimony, although it may not be the only

factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

      The ALJ set out, in detail, the medical evidence regarding Plaintiff's

impairments and concluded that her allegations were inconsistent with the

evidence. Tr. 26-29. For example, regarding Plaintiff's pain and numbness in her

back, knees, hands, and feet, the ALJ noted Plaintiff's physical exams revealed few

objective abnormalities and no deformities of the extremities, no knee instability,

and no motor or sensory deficit. Tr. 27 (citing Tr. 518, 520, 522, 532, 557, 559,

561, 565, 567, 806, 839, 867-68, 1111, 1113, 1115, 1117, 1119, 1132, 1134, 1138,

1143, 1147, 1154, 1159, 1163, 1168). Imaging revealed mild disc degeneration of

the cervical spine and no abnormalities of the thoracic spine and left foot. Tr. 26.

There was no imaging of the lumbar spine, hand or knees. Tr. 26. The ALJ further

noted there is little evidence of edema, other than during her temporary

hospitalizations, and Plaintiff has been able to improve her blood pressure with

medication. Tr. 27.

Likewise, the ALJ noted that Plaintiff's mental health treatment record did not reveal "the type of significant abnormalities one would expect if the claimant were in fact disabled." Tr. 28. Plaintiff rated her depression as moderate and anxiety as mild. Tr. 28. The ALJ also noted that with treatment, Plaintiff's mental status examinations indicated she was cooperative and pleasant, her mood was good and affect was bright, her thought process was linear, and she was not endorsing hallucinations or delusions. Tr. 28-29 (1173, 1186, 1188, 1191, 1193-94, 1206, 1208-09).

Plaintiff contends the ALJ selectively focused on certain aspects of the record, but Plaintiff does not otherwise contest the ALJ's findings with citations to the record. ECF No. 16 at 17. Factual and legal support must accompany contentions. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). By failing to support her asserted contention, Plaintiff waived this argument. *See id.*; *Carmickle*, 533 F.3d at 1161 n.2. Moreover, substantial evidence supports the ALJ's conclusion that there were minimal findings supporting Plaintiff's allegation of disabling symptoms. The ALJ reasonably concluded that the objective medical evidence did not support the alleged severity of Plaintiff's symptom claims.

*2. Daily Activities*

The ALJ also concluded Plaintiff's allegations of disabling limitations were inconsistent with her activities of daily living. Tr. 28-29. It is reasonable for an

ALJ to consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of her day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. The ALJ specifically identified Plaintiff's ability to perform duties on a work crew. Tr. 28 (citing Tr. 568 (Jan. 2014: indicating Plaintiff reported tolerating the increased activity associated with work crew "better than she thought she would."); Tr. 566 (Feb. 2014: progress note indicating Plaintiff had completed work crew, lost 32 pounds since her last visit, and had plans to continue with increased activity to continue to lose weight). Plaintiff also reported walking more 10,000 steps or 3.4 miles per day. Tr. 28 (citing Tr. 84-85). Finally, the ALJ noted that since April 2015, Plaintiff was engaged in work at Subway involving prep work, making food, waiting on customers, taking orders, and cashiering. Tr. 29. The ALJ noted that although she alleged her mental health impairments impacted her work several times per month, she was promoted to shift lead in

ORDER - 30

February 2016 and worked eight-hour shifts.  Tr. 68.  Although she testified to only working part-time, she told her primary care provider she was working full time.  Tr. 1110, 1131.  Plaintiff offers no support for her characterization of Plaintiff's gainful employment as a "modest" activity.  ECF No. 16 at 18.  The ALJ reasonably concluded that Plaintiff's self-reported activities were inconsistent with the level of impairment she alleged.

### 3. *Conservative Level and Effectiveness of Treatment*

The ALJ discounted Plaintiff's symptom claims because of references in the record Plaintiff could control her symptoms with conservative treatment and evidence that her mental health improved with medication and therapy.  Tr. 28-29.  The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3) (2011); *see Warre*, 439 F.3d at 1006 (recognizing that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.).  Here, the ALJ cited numerous treating records evidencing Plaintiff's pain was controlled with medication.  On August 24, 2015, Plaintiff presented to her primary care provider for an evaluation of back pain, but reported that rest and pain medication "make it better" and that with the pain

medication "she is able to do her ADL's." Tr. 1122. The ALJ also cited other office visits where Plaintiff reported her pain was tolerable with medication and related to walking and lifting associated with her work. Tr. 28 (citing Tr. 1125, 1161, 1165 (noting Plaintiff "only ever has problems with her back on the days she has to unload freight at work" and that Plaintiff has foot pain related to walking and lifting throughout the day at her work). In addition, as discussed in regard to the medical opinions of Dr. Kouzes and Dr. Moon, during Plaintiff's psychotherapy and medication management, Plaintiff's mental health showed improvement and stabilization. The ALJ's decision that Plaintiff's mental health improved when she received consistent therapy, along with medication management, is a rational interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision.). This was a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

In sum, the ALJ provided several clear and convincing reasons to discredit Plaintiff's symptom testimony. Plaintiff is not entitled to relief on these grounds.

**D. Lay Evidence**

Plaintiff challenges the ALJ's treatment of statements provided by Betty Foster, Plaintiff's grandmother.  ECF No. 16 at 14-16.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1055.  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

The ALJ considered Ms. Foster's Third Party Function Report.  Tr. 30, 336-43.  Ms. Foster indicated Plaintiff has paranoia, pain, anxiety, mental issues, interrupted sleep due to nightmares and flashbacks, a need for reminders, manic moods, "problems with everyone due to being paranoid," social isolation, to be told more than three times how to do things, problems getting along with authority figures, and impairments affecting her memory and ability to lift, squat, bend, stand, walk, stair climb, complete tasks, concentrate, follow instructions, use

hands, and get along with others. Tr. 336-43. The ALJ accorded Ms. Foster's statement some weight. Tr. 30. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony). Here, the ALJ noted Ms. Foster's report was generally consistent with Plaintiff's function reports. Tr. 30 (*comparing* Tr. 336-43 *with* Tr. 332-30 *and* Tr. 355-62). Like Plaintiff's statements, the ALJ discounted Ms. Foster's statements because they were inconsistent with the objective medical evidence and medical evidence showing stabilization of Plaintiff's mental health symptoms with treatment. Tr. 30. Thus, the ALJ's well-supported reasons for rejecting Plaintiff's subjective symptom claims apply equally to Ms. Foster's statements.

### E. Steps Four and Five

Finally, Plaintiff contends the ALJ erred at steps four and five because the ALJ relied upon an RFC and hypothetical that failed to include all of Plaintiff's limitations, including: consistently off task 15% of the time, varying up to 33%

occasionally; absent two times per month; difficulty with routine tasks without special supervision on an ongoing basis; and the need to elevate legs to chest height 1-2 times per week for two hours during the day. ECF No. 16 at 20.

However, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray*, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs–Danielson*, 539 F.3d at 1175–76.

Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence, Plaintiff's symptom claims, and the lay evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's adverse finding regarding Plaintiff's subjective symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC and posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's detailed RFC determination, to which the expert responded that Plaintiff could perform work as a small products assembler, electrical accessories assemblers, electronics worker, electrical equipment sub-assembler, and parking cashier. Tr. 33. The ALJ properly relied upon this testimony to support the step four and alternative step five determinations. Therefore, the ALJ's determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 14, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37